```
                                                                        1

 1                      IN THE UNITED STATES DISTRICT COURT
                        FOR THE NORTHERN DISTRICT OF TEXAS
 2                              FORT WORTH DIVISION

 3   UNITED STATES OF AMERICA         .   CRIMINAL ACTION NO.
                                      .   4:09-CR-160-A
 4   V.                               .
                                      .   Fort Worth, Texas
 5   EDUARDO FLORES                   .   April 2, 2010
     . . . . . . . . . . . . . . . . .
 6

 7

 8
                            TRANSCRIPT OF PROCEEDINGS
 9                            (Sentencing Hearing)
                       BEFORE THE HONORABLE JOHN MCBRYDE
10                       UNITED STATES DISTRICT JUDGE

11

12

13

14   APPEARANCES:

15   For the Government:            MR. JOSHUA T. BURGESS
                                    United States Attorney's Office
16                                  801 Cherry Street, Suite 1700
                                    Fort Worth, Texas  76102-6897
17                                  (817) 252-5200

18   For the Defendant:             MR. JOHN W. STICKELS
                                    Stickels & Associates
19                                  P.O. Box 121431
                                    Arlington, Texas  76012
20                                  (817) 479-9282

21   Court Reporter:                MS. ANA P. WARREN
                                    U.S. District Court Reporter
22                                  501 W. 10th Street, Room 201
                                    Fort Worth, Texas  76102-3637
23                                  (817) 850-6681

24
     Proceedings recorded by mechanical stenography; transcript
25   produced by computer-aided transcription.


                              U.S. DISTRICT COURT
```

1          ***P R O C E E D I N G S***

2              (Commencing, 9:30 a.m.)

3              THE COURT:  I'm next calling for sentencing Number

4    4:09-CR-160-A, United States of America versus Eduardo

5    Flores.

6        Mr. Burgess is here for the government.  Mr. Stickels is

7    here for the defendant.

8        Let's see.  Mr. Stickels, does your client need an

9    interpreter?

10             MR. BELCHER:  No, Your Honor.

11             THE COURT:  Do I have another case with the need of

12   an interpreter?

13             THE CLERK:  Yes, sir.

14             THE COURT:  Okay.  Is it a sentencing?

15             THE CLERK:  It's a sentencing.

16             THE COURT:  Okay.  We'll be back with you in a

17   minute.

18             THE INTERPRETER:  Thank you, Your Honor.

19             THE COURT:  Mr. Flores, you appeared before me on

20   December 11, 2009 when you entered a plea of guilty to Count 1

21   of the superseding indictment, I guess it was.  Is that

22   correct?

23             DEFENDANT FLORES:  Yes, Your Honor.

24             THE COURT:  In this case.  And that was the count

25   charging you with conspiracy to smuggle goods from the United

1  States, and we're here -- and you also entered a plea of true
2  to the forfeiture allegations in that superseding indictment.
3  Those pleas were made pursuant to a plea agreement that
4  contemplated that the charges against you in the underlying
5  indictment would be -- I guess the original indictment would
6  be dismissed at the time of sentencing if the Court were to
7  approve the plea agreement.
8      Let's see.  He was named in only one count of the original
9  indictment; is that correct?
10          MR. BURGESS:  I believe that's correct, Your Honor.
11          THE COURT:  The same offense he pleaded guilty to?
12          MR. BURGESS:  Correct, Your Honor.
13          MR. STICKELS:  Your Honor, may Mr. Flores have a
14 seat?  He can't stand up very long.
15          THE COURT:  He can sit down.  I may have him get up
16 in a minute, but he can sit down right now.
17      For the information of the parties, I do accept the plea
18 agreement, and the judgment of the Court will be consistent
19 with it.  Of course, we're here today for sentencing based on
20 the conviction resulting from the defendant's plea of
21 guilty.
22      Mr. Stickels, did you and your client receive in a timely
23 manner the presentence report and the addendum to it and my
24 letter of March 29 expressing my tentative conclusions?
25          MR. STICKELS:  Yes, Your Honor, we did.

1           THE COURT:  And did both of you read those items --
2  did both of you read those items and then discuss them with
3  each other?
4           MR. STICKELS:  Yes, Your Honor, we did.
5           THE COURT:  Let's see.  There was an objection.  Are
6  you still urging that objection?
7           MR. STICKELS:  Yes, Your Honor, we are.
8           THE COURT:  The objection is that there were no more
9  than ten weapons and that none of the weapons were fully
10 automatic, and, therefore, the contention is that this should
11 not have been an increase in the offense level.  The objection
12 was as to Paragraph 42, Page 11 of the presentence report, and
13 that was the paragraph where he received a 26 -- an offense
14 level of 26.
15     You're saying the offense level should be 14?
16          MR. STICKELS:  Yes, Your Honor.  We submit --
17          THE COURT:  What's the basis for that contention?
18          MR. STICKELS:  Because there were not more than ten
19 weapons being exported, and none of the weapons were fully
20 automatic.  The increase was based upon the magazines being
21 added to weapons.  Magazines are not weapons.  They cannot be
22 used without the firearm.
23     In addition, Your Honor, the magazines all fit the same
24 weapon.  They were not different magazines that could be used
25 with different firearms, and we submit that the guideline

1  should be a Level 14 because the magazines are not weapons.
2          THE COURT:  Well, hasn't the Fifth Circuit held that
3  ammunition is properly used in determining the base offense
4  level in that Galvan-Revuelta case?
5          MR. STICKELS:  I disagree that it specifically says
6  that, Judge.  It talks about ammunition being used as part of
7  the offense but not specifically under the guidelines.
8          THE COURT:  Well, isn't the ammunition listed in the
9  U.S. Munitions List as being prohibited from being exported to
10 the United States?
11         MR. STICKELS:  Yes, sir, it is.
12         THE COURT:  Well, then wouldn't it necessarily be
13 taken into account?
14         MR. STICKELS:  Yes, Your Honor, but the ammunition in
15 the magazines cannot be used without the firearm itself.  They
16 are not independent weapons.  The magazine cannot be used
17 without the firearm.  The increase in levels is based upon the
18 magazines and not the ammunition, and we submit the magazines
19 are not firearms.
20         THE COURT:  What's your response to that,
21 Mr. Burgess?
22         MR. BURGESS:  Your Honor, the guideline in 2M5.2A2
23 says, if the offense involved only non-fully automatic small
24 arms, and then it continues, and the case law cited by the
25 government in its response indicates that the clear reading of

1  the guideline is, if you add anything to the firearms, you're
2  going to go into this higher guideline level under 2M5.2A1.
3  So we believe because he was found with, not only the
4  firearms, but all the related articles to those firearms, he
5  falls outside of A2.
6          THE COURT: Let me get the section of the guideline.
7  What page in the book?
8          MR. BURGESS: In the 2009 version, it's Page 280,
9  Your Honor.
10         MR. STICKELS: In addition, Your Honor, there was no
11 ammunition, just magazines, and the magazines aren't an
12 essential part of the firearm itself.
13         THE COURT: Okay. The guideline provision says that
14 the base offense level is to be at 26, which is what the
15 probation officer did, except as for in Subdivision 2 below.
16 Subdivision 2 says it would be 14 if the offense involved only
17 non-fully automatic small arms, rifles, handguns, or shotguns,
18 and the number of weapons did not receive exceed ten. Well,
19 it did not involve only rifles, handguns, and shotguns. It
20 involved magazines.
21         MR. STICKELS: Yes, sir. But the magazines are an
22 essential part --
23         The COURT: Is that the government's position?
24         MR. BURGESS: That is our position, yes, Your Honor.
25         THE COURT: Go ahead.

1         MR. STICKELS: Your Honor, it's our position that
2    magazine is an essential part of the weapon. The weapon won't
3    fire without a magazine, and a magazine cannot be used without
4    a weapon. They're one in the same.
5         THE COURT: Do you have any authority for your
6    position on that?
7         MR. STICKELS: No, Your Honor, I don't.
8         THE COURT: Well, it's not a totally absurd argument
9    that I hear sometimes up here. It's an argument that has some
10   rationale to it. I think the Fifth Circuit case or cases that
11   have been cited to me indicate that they should be taken into
12   account.
13      Go ahead.
14        MR. BURGESS: Well, I was just going to add, Your
15   Honor, that according to Paragraph 24 of the PSR, what was
16   received were six AR-15 rifles, a Colt .38 super pistol, and
17   200 pistol magazines. So the argument that these magazines
18   are part and parcel with the weapon belies the facts. These
19   are extra magazines going to a place where there are,
20   apparently, extra firearms.
21        THE COURT: Are you saying all of these magazines
22   were part of that one weapon?
23        MR. STICKELS: Yes, Your Honor.
24        THE COURT: Well, your argument has degenerated into
25   what I sometimes hear.

1          Okay.  I'll overrule the objection.

2          Have you stated your best argument in support of that

3    objection now?

4               MR. STICKELS:  Yes, Your Honor.

5               THE COURT:  Okay.  I'll overrule the objection.  I'm

6    satisfied that the probation officer is correct in what the

7    probation officer did.

8          There being no further objections to the presentence

9    report or the addendum, the Court adopts as the fact findings

10   of the Court the facts set forth in the presentence report as

11   modified or supplemented by the addendum and any facts I found

12   from the bench, and the Court adopts as the conclusions of the

13   Court the conclusions expressed in the presentence report as

14   modified or supplemented by the addendum and any conclusions

15   I've expressed from the bench.

16         The Court concludes that the total offense level is 26 --

17   or 25.  The Criminal History Category is I.  That the

18   imprisonment range is 57 to 60 months.  That the supervised

19   release range is two to three years.  That the fine range is

20   $10,000 to $100,000, and that a special assessment of $100 is

21   mandatory.

22         Okay.  You can make whatever statement you would like to

23   make on behalf of your client.

24              MR. STICKELS:  Your Honor, in addition, we filed a

25   motion for downward departure based upon Mr. Flores's physical

```
 1   condition.
 2           THE COURT:  Okay.  Do you want to offer any evidence
 3   in support of that?
 4           MR. STICKELS:  Yes, Your Honor.  We would ask that
 5   Mr. Flores be sworn in, and in addition the presentence report
 6   documents part of his medical condition, also, Your Honor.
 7           THE COURT:  Well, I'm going to consider everything in
 8   the presentence report.  Did you want your client to testify
 9   as well?
10           MR. STICKELS:  Yes, Your Honor.
11           THE COURT:  Okay.  Mr. Flores, why don't you come
12   around here.
13      Okay.  Get yourself in a position where you can raise your
14   right hand and be sworn.
15        (Defendant sworn by the Court)
16           THE COURT:  Okay.  Come up and be seated.
17      Okay.  You may proceed.
18           MR. STICKELS:  Thank you, Your Honor.
19          EDUARDO FLORES, testified under oath as follows:
20                        DIRECT EXAMINATION
21   BY MR STICKELS:
22   Q.  Is your name Eduardo Flores?
23   A.  Yes, sir.
24   Q.  Mr. Flores, did you suffer from polio when you were an
25   infant?
```

1  A. Yes, sir.
2  Q. Would you tell the judge what happened?
3  A. I was 11 months when I got a fever. They took me to the
4  doctor, and it turned out to be polio. I was in a coma, and
5  as a result of that, I ended up with polio.
6  Q. As a result of your polio, have you had any operations?
7  A. Seven, seven surgeries.
8  Q. Seven surgeries?
9  A. Yes, sir.
10 Q. Can you tell the judge what they operated on?
11 A. On my nerves and my bones, my legs.
12 Q. Which side of your body is affected.
13 A. Both sides, the left side and the right.
14 Q. And how has having polio affected you in your life?
15 A. Tremendously. I don't want to blame nobody for my
16 condition, but it's obvious I have suffered all my life. It's
17 been hard.
18 Q. Has the polio caused you any physical limitation?
19 A. Yes, sir.
20 Q. Tell me about those.
21 A. Physical limitations like climbing steps, walking, playing
22 sports, stuff like that growing up, and the older I get, the
23 weaker I get. And, you know, I've had a few experiences in
24 the federal prison here in Fort Worth with the doctor
25 discriminating.

1  Q.  Has your physical condition deteriorated since you've been
2  in the jail, since you were arrested?
3  A.  Yes, sir.
4          MR. STICKELS:  That's all I have, Your Honor.
5          THE COURT:  Do you have any questions you want to
6  ask?
7          MR. BURGESS:  No, Your Honor.  Thank you.
8          THE COURT:  Okay.  You may step down.
9      Do you have anything you want to offer on the issue of
10 downward departure?
11         MR. STICKELS:  No, Your Honor, just the sentencing
12 memorandum that we filed and nothing else on the medical --
13         THE COURT:  Okay.  Well, I've considered that.  I
14 don't think a sentence below the bottom of the guideline range
15 would be an appropriate sentence in this case, but I'll
16 certainly take into account what I've heard and what I see
17 here in determining where to sentence within that guideline
18 range.
19     Okay.  At this time you can make any statement you would
20 like to make on behalf of your client.  Maybe it would be a
21 good idea for your client to stay there while you do that.
22         MR. STICKELS:  Yes, Your Honor.
23     Your Honor, Mr. Flores committed this offense, and he
24 admitted his guilt.  He voluntarily stayed in custody since he
25 was arrested in this case, Your Honor.

1   If you look at the facts of this case, Mr. Flores's
2   conduct was limited to receiving a phone call and making a
3   phone call.  And that's against the law and he's been
4   convicted for that and he's sorry, Your Honor, but the
5   guidelines in this case are more severe than what his conduct
6   would merit, and we would ask the judge to sentence him below
7   the guidelines.  We believe that would be a reasonable
8   sentence, Your Honor.
9           THE COURT:  Okay.  Mr. Flores, you have the right to
10  make any statement or presentation you would like to make on
11  the subject of mitigation, that is, the things you think the
12  Court should take into account in determining what sentence to
13  impose or on the subject of sentencing more generally, and at
14  this time I would invite you to do that.
15          DEFENDANT FLORES:  Well, Your Honor, I would like to
16  apologize to the Court, to yourself, and to the citizens of
17  the United States.  I made a big mistake.  Therefore, I'm
18  standing here before you asking for clemency to please give me
19  a lesser sentence than recommended.  My family needs me, my
20  wife, my kids, my family and friends.  It's been very hard on
21  all of us.  I made a big mistake.  Like I said, I'm standing
22  here asking for clemency.  Please get me back to my family as
23  soon as possible.  Thank you.
24          THE COURT:  Okay.  Well, I am going to take into
25  account the things I've heard in determining where to sentence

1   within the advisory guideline range, and I think a sentence of
2   57 months, which is the very bottom, would be an appropriate
3   sentence in this case.  I think that combined with a term of
4   supervised release of two years to start when he gets out of
5   prison and a special assessment of $100 would be a reasonable
6   sentence that would appropriately and adequately address all
7   of the factors the Court should consider in imposing a
8   sentence under 18, United States Code, Section 3553(a).
9       So the Court orders and adjudges that the defendant be
10  committed to the custody of the Bureau of Prisons to serve a
11  term of imprisonment of 57 months.  I'm not ordering him to
12  pay a fine because I don't have information that would cause
13  me to find that he has the resources to do so or would any
14  time soon.  I am ordering the defendant to serve a term of
15  supervised release of two years.  That will start when the
16  defendant gets out of prison.
17      Now, the conditions of that supervised release would be
18  the standard conditions that would be set forth in the
19  judgment of sentence and conviction and the following
20  additional conditions:
21      He shall not commit another federal, state, or local
22  crime.  He shall not possess illegal controlled substances.
23  He shall cooperate in the collection of DNA as directed by the
24  probation officer.  He shall participate in a program -- and
25  it can be either in-patient or out-patient -- approved by the

14

1  probation officer for the treatment of narcotic or drug or
2  alcohol dependency.  That would include testing for the
3  detection of substance abuse, and he shall abstain from the
4  use of alcohol and all other intoxicants during and after
5  completion of treatment and shall contribute to the cost of
6  those services at the rate of at least $25 a month.
7       He shall refrain from any unlawful use of a controlled
8  substance and shall submit to one drug test within 15 days of
9  release from imprisonment and at least two periodic drug tests
10 as directed by the probation officer pursuant to the mandatory
11 drug testing provision of the 1994 Crime Bill.
12      The Court further orders that the defendant pay a special
13 assessment of $100.  That's payable immediately to the United
14 States of America through the office of the United States
15 Clerk.
16      Let's see.  Does the government have a motion to make in
17 this case?
18          MR. BURGESS:  Your Honor, we also would request that
19 forfeiture be part of the sentence.
20          THE COURT:  Do you have something you want to read?
21          MR. BURGESS:  May I, Your Honor?
22          THE COURT:  Okay.
23          MR. BURGESS:  Thank you.
24          THE COURT:  You can sit down while he's reading that.
25          MR. BURGESS:  Pursuant to 19, USC, Section

1   1595(a)(d), and 28, USC, Section 2461(c), the defendant

2   forfeits his interests in the following property:

3       A 2008 Dodge Ram, VIN 3D6WC66A08G148431, bearing Oklahoma

4   license plate 180BXC.

5       2003 Ford F-550, VIN 1FDAF56P53EC75452, and bearing

6   Oklahoma license plate 073BAZ.

7       2007 Chevrolet box truck, VIN 1GBHG31U871160895.

8       2007 Chevrolet box truck, VIN 1GBHG31V071181295.

9       Six Colt law enforcement carbines 5.56 millimeter rifles,

10  Model LE6920, Serial Numbers LE074662, LE073524, LE074412,

11  LE073210, LE0668877, and LE073371.

12      One Colt Model 02091, El Jefe, .38 caliber, Serial Number

13  38SS04015.

14      One hundred rounds of Lake City .50 caliber ammunition.

15      And eight PTR-91, Model KMF4, .308 carbines, seized from

16  the house of Gustavo Pulido on or about July 14, 2009.

17          THE COURT:  Okay.  I'll adopt what was just read by

18  Mr. Burgess as an order of the Court, and I so order.

19      Mr. Flores, come back up to the microphone just a

20  minute.

21      You have the right to appeal from the sentence I've

22  imposed if you're dissatisfied with it.  That appeal would be

23  to the United States Court of Appeals for the Fifth Circuit.

24  You have the right to appeal in forma pauperis.  That means,

25  without any cost to you if you qualify for it, and presumably

1  you would.  You have the right to have the clerk of the court
2  file a notice of appeal for you, and the clerk will do that
3  forthwith if you were to specifically request it.
4      You and your attorney have been given a form that outlines
5  certain rights and obligations in reference to an appeal.  If
6  you haven't already done so, I want both of you to go over it
7  and be sure you understand it.  Once both of you are satisfied
8  you understand it, I want both of you have to sign it and
9  return it to the court coordinator.
10      Has that been done?
11          MR. STICKELS:  That's been done, Your Honor.
12          THE COURT:  Okay.  The defendant is remanded to
13  custody and --
14          MR. STICKELS:  I apologize, Your Honor.  I forgot to
15  ask that Mr. Flores, if qualified, be allowed to partake in
16  the drug and alcohol treatment program while he's in prison.
17          THE COURT:  I'm not sure he would be eligible, but I
18  don't make that decision.  Some gun offenses they won't allow
19  them to participate.
20          MR. STICKELS:  Yes, sir.
21          THE COURT:  But let me look at something else.
22      (Brief pause in proceedings)
23          THE COURT:  Apparently, he has an alcohol problem.
24  I'm not persuaded that his problem is serious enough that
25  I would make that recommendation.  Of course, he can ask for

1  it himself when he gets there.  It would be up to the prison
2  officials to decide.
3      Mr. Burgess.
4          MR. BURGESS:  Your Honor, I move to dismiss the count
5  in the original indictment against the defendant.
6          THE COURT:  Okay.  And that motion is granted.  The
7  count in the original indictment is dismissed.
8          MR. STICKELS:  Thank you, Your Honor.
9          THE COURT:  The defendant is remanded to custody and
10 the attorneys are excused.
11     (End of proceedings, 9:55 a.m.)
12                          -oOo-
13
14                          I N D E X
15 Witnesses:        Direct    Cross    Redirect    Recross
16 Eduardo Flores       9
17
18                          -oOo-
19
20                        CERTIFICATE
21    I certify that the foregoing is a correct transcript from
   the record of proceedings in the above-entitled matter, and
22 that the transcript was prepared by me and under my
   supervision.
23
   s/  Ana P. Warren                      June 15, 2010
24 Ana P. Warren, CSR #2302                    Date
   U.S. District Court Reporter
25                          -oOo-